OPINION OF THE COURT
Charles Edward Ramos, J.
This action was commenced by the Attorney General to hold the individual defendants, former members of the Board of Trustees of Adelphi University, financially accountable for mismanagement of the assets of the University, in violation of the Not-For-Profit Corporation Law. The Attorney General also seeks partial return of a retainer paid to defendant Arkin, Schaffer & Kaplan L. L. P. (Arkin Schaffer). Defendants, excluding defendant Peter Diamandopoulos, move to dismiss plaintiff’s twenty-eighth through thirty-first causes of action. Defendant Peter Diamandopoulos moves to dismiss plaintiff’s fifth, ninth, fourteenth, twenty-second, twenty-fourth and twenty-eighth causes of action.
The individual defendants also seek advance indemnification pursuant to N-PCL 724, and to stay this action, pursuant to CPLR 2201, pending determination of a related CPLR article 78 proceeding in Supreme Court, Albany County.
The individual defendants are all former members of the Board of Trustees of Adelphi University, a private, not-for-profit, nonsectarian educational corporation operating under a charter granted by the New York State Board of Regents. Peter Diamandopoulos, in addition to being a trustee, was president of the University. Arkin Schaffer is a law firm representing all the former trustees except Diamandopoulos.
In the fall of 1995, the Charities Bureau of the Attorney General’s office began to investigate various matters at Adelphi, including Diamandopoulos’ compensation package. In 1996, at the request of the Committee to Save Adelphi (CSA), the Board of Regents began a separate investigation, and selected a three-member panel to preside over a hearing on CSA’s petition to remove the entire Board of Trustees. The hearing was held over the course of 27 days, during the period between July 30 and November 20, 1996. The trustees retained *726 counsel for their defense, whose fees were paid by Adelphi. In February 1997, shortly before the Board of Regents issued its decision, the trustees retained the law firm of defendant Arkin Schaffer. A retainer fee of $250,000 was paid by Adelphi. On February 5, 1997, the panel circulated a report and recommendation to the full Board of Regents. On February 10, the Board of Regents adopted the report, ordering the immediate removal of 18 of the 19 trustees, and replacing them with new trustees selected by the Regents. The former trustees filed an article 78 proceeding, and won a stay of the Regents’ determination, thereby remaining in power. Shortly thereafter they withdrew the proceeding without prejudice, and relinquished their positions on the Board. Subsequently, they recommenced an article 78 proceeding. That proceeding was pending at the time this motion was submitted, but was subsequently dismissed as untimely.
Adelphi’s new Board, through its law firm, Paul Weiss Rifkin Wharton & Garrison, demanded that Arkin Schaffer return the unspent portion of the retainer. Arkin Schaffer responded that the former trustees are entitled to have their attorneys’ fees paid to challenge the Regents’ determination and to defend them in a potential lawsuit by the Attorney General, who had been authorized by the Regents on March 11 to initiate litigation, and that the retainer was properly paid. However, Arkin Schaffer offered to pay the money to Paul Weiss to be held in escrow for payment of attorneys’ fees. Before the matter of the retainer was resolved, the Attorney General brought this action.
The claims raised in this action are based upon the allegedly excessive compensation package given to defendant Peter Diamandopoulos, improper utilization of the insurance brokerage service of E.G. Bowman & Co., improper usage of the LOIS/ USA advertising services, improper purchasing of goods and services, improper indemnification, and improper retainer of Arkin Schaffer.
After commencement of this action, the former trustees sought confirmation from Adelphi’s replacement Board that the attorneys’ fees paid by Adelphi to defend them constituted proper indemnification under Adelphi’s bylaws and the indemnification statute. They also sought advance indemnification pursuant to N-PCL 723 (c) for the defense expenses to be incurred in the present action and the related article 78 proceeding challenging the Regents’ decision. Adelphi’s attorneys responded that the confirmation regarding indemnifica *727 tion for fees already paid was premature because there had not been a final disposition of the Regents’ proceeding or this lawsuit. They also declined to advance expenses for attorneys’ fees to be incurred in the future.
Defendants move to dismiss the twenty-eighth cause of action for failure to state a claim for relief. That cause of action alleges that: “By causing or permitting University assets to be paid for defense costs to the trustees in the Attorney General’s investigation and the proceeding to quash or compel compliance with his subpoenas and in the proceedings before the Regents of the University of the State of New York, defendant trustees indemnified persons who had not acted in good faith for a purpose reasonably believed to be in the best interests of the corporation, in violation of N-PCL § 722.”
N-PCL 722 provides for a corporation to indemnify a director or officer for, inter alia, attorneys’ fees incurred as a result of an action brought against them in their capacity of a director or officer of the corporation. Indemnification is authorized where the director or officer “acted, in good faith, for a purpose which he reasonably believed to be in, or * * * not opposed to, the best interests of the corporation” (N-PCL 722 [a]). Accordingly, if the bylaws of Adelphi permit indemnification, it would be authorized where the director or officer acted in good faith.
The bylaws of Adelphi provide that: “Each Trustee and Officer of the University shall be indemnified against all expenses actually and necessarily incurred by such Trustee or Officer in connection with the defense of any action, suit, or proceeding to which he or she has been made a party by reason of being or having been such Trustee or Officer except in relation to matters as to which such Trustee or Officer shall be adjudicated in such action, suit, or proceeding to be liable for gross negligence or willful misconduct in the performance of duty.” The statute and the bylaws must be construed together. If the trustees acted in good faith, were not found to have acted wrongfully in the performance of their duties and did not personally gain a financial profit to which they were not legally entitled, they would be entitled to indemnification, pursuant to N-PCL 722 and Adelphi’s bylaws.
With respect to the compensation package of the University president, the Regents found that “the trustees failed to exercise the degree of care and skill that ordinarily prudent persons would have exercised in like circumstances,” and that they “failed to exercise due care to ensure that Diamandopoulos’ compensation package as a whole was ‘reasonable’ and *728 ‘commensurate with the services performed,’ as required by N-PCL § 202 (a) (12).” With respect to the use of the insurance brokerage services of former Trustee Procope, the Regents found that “Procope and Diamandopoulos neglected their fiduciary duties to Adelphi,” and that “Diamandopoulos’ actions were not consistent with his duties of undivided loyalty and care to Adelphi.” The Regents concluded that Diamandopoulos and Procope should be removed from the Board “for neglect of their duties of due care and loyalty.” The Regents did not address whether the insurance fees were reasonable.
Reviewing the use of former Trustee Lois’ advertising firm, the Regents found “that Lois neglected both his duties of due care and undivided loyalty to Adelphi,” and that he “violated his fiduciary duty by failing to disclose to the board that lois/ usa was, indeed, being paid for services rendered to Adelphi.” The Regents concluded that Diamandopoulos and Lois should be removed “for neglect of their fiduciary duties of due care and loyalty.” The Regents also found “that the full board of trustees neglected its duty of due care to Adelphi by failing to take appropriate action once it learned of Procope’s and Lois’ potential conflicts.” They recommended removal of the 18 trustees “for neglect of their duty of due care.” The Regents did not address whether Lois’ company received excessive payment for the work which was done.
The Regents found that Diamandopoulos neglected his duty as trustee with respect to the purchasing of goods and services for the University by failing to disclose to the audit committee facts pertinent to their review of the University’s purchasing department. His failure to reveal information was found to constitute “neglect of duty.”
The Regents also found that the trustees failed in their duty to abide by and implement the Articles of Governance, which call for faculty participation in the governance of the University, particularly with respect to academic matters and related educational policies and procedures. The Regents recommended the removal of the trustees for neglect of duty on this basis as well.
The complaint (and the Regents’ findings) contains the necessary allegations that the trustees were guilty of bad faith. Therefore, accepting the allegations in the complaint as true, and giving the plaintiff the benefit of every reasonably conceivable inference, as must be done in a motion to dismiss (Leon v Martinez, 84 NY2d 83 [1994]), bar dismissal of the complaint at this stage. In addition the former trustees may *729 not have followed the proper procedures for authorizing indemnification. Accordingly, defendants’ motion to dismiss the twenty-eighth cause of action of the complaint is denied.
The defendants requested that Adelphi pay for the cost of their legal defense in this lawsuit; Adelphi refused the request. Accordingly, the defendants seek to have this court order Adelphi to advance the reasonable expenses to be incurred in defending this litigation, as provided for in N-PCL 724 (c). The Attorney General and Adelphi oppose this application, claiming that the defendants are not entitled to such advance indemnification due to their grossly negligent conduct, and extreme breaches of fiduciary duties. The Attorney General also contends that the University’s financial situation is fragile, and that advancing the money at this time could prove too much of a financial strain.
N-PCL 724 (c) provides: “Where indemnification is sought by judicial action, the court may allow a person such reasonable expenses, including attorneys’ fees, during the pendency of the litigation as are necessary in connection with his defense therein, if the court shall find that the defendant has by his pleadings or during the course of the litigation raised genuine issues of fact or law.”
Given the scope of the findings of neglect of duty by the Regents, this court finds the granting of such indemnification not to be warranted.
Defendants seek dismissal of causes of action twenty-ninth, thirtieth and thirty-first which seek restitution from Arkin Schaffer for the unspent portion of the retainer paid in February 1997. The causes of action are based on conversion, unjust enrichment, and money had and received.
■ In order to state a claim for unjust enrichment, the plaintiff must plead facts alleging that Arkin Schaffer was enriched, and that under the circumstances, equity and good conscience require that the money be returned. (Simonds v Simonds, 45 NY2d 233, 242 [1978]; Chemical Bank v Equity Holding Corp., 228 AD2d 338 [1st Dept 1996].) Innocent parties may also be unjustly enriched (Simonds v Simonds, supra), so Arkin Schaffer’s innocence of wrongdoing is irrelevant to the inquiry.
Here, Arkin Schaffer received a retainer fee from the former trustees. In order to conclude that there was no unjust enrichment, there must be a finding that the money was properly given to Arkin Schaffer. Given this court’s determination above, this portion of the motion to dismiss is denied.
*730 The Attorney General also alleges a claim based upon conversion. To establish a cause of action for conversion, the complaint must allege facts demonstrating that Adelphi had legal ownership or an immediate superior right of possession to specific identifiable personal property, and that Arkin Schaffer exercised unauthorized dominion over the property to the exclusion of Adelphi’s rights. (See, Aetna Cas. & Sur. Co. v Glass, 75 AD2d 786 [1st Dept 1980].) There must be a specific identifiable fund and an obligation to return it in order for an action for conversion to lie. (Manufacturers Hanover Trust Co. v Chemical Bank, 160 AD2d 113, 124 [1st Dept 1990].)
There is no evidence before the court as to whether the retainer was placed in a separate account; therefore, the issue of whether it constitutes a specifically identifiable fund cannot be determined. This portion of the motion is denied with leave to renew.
The defendants seek a stay of this action pending the outcome of an article 78 proceeding seeking annulment of the Regents’ determination. Since the petition was subsequently dismissed, that portion of the motion is denied as moot.
Diamandopoulos contends that the fifth cause of action must be dismissed because the complaint fails to allege facts to support a conclusion that he caused himself to receive compensation and benefits, or that he withheld information or otherwise misled the Board when his compensation was determined. Further, Diamandopoulos argues that the Attorney General fails to assert any factual allegations as to how he caused Board action when he was only one member of the Board. Additionally, he points out that the complaint itself alleges facts in contradiction to such a claim, by stating that there was an Executive Compensation Committee which determined Diamandopoulos’ salary without the involvement of the other trustees, so Diamandopoulos could not have been involved in the determination.
The fifth cause of action alleges that: “[b]y causing or permitting himself to receive compensation and benefits from University assets in the amounts alleged, defendant peter diamandopoulos failed to discharge his duties as trustees [sic] of Adelphi University in good faith, in violation of Section 717 of the'N-PCL.” The Attorney General claims that Diamandopoulos placed his own self-interest above that of the University by accepting increasingly high levels of compensation while the University was facing serious problems. He further claims that Diamandopoulos had tremendous influence over the other *731 trustees, and that Procope, who was chair of the Executive Compensation Committee, was undoubtedly seeking to curry favor with Diamandopoulos since Diamandopoulos picked her insurance company to handle Adelphi’s insurance needs. Further, the complaint alleges that almost all of the trustees who served on the Executive Compensation Committee, beginning in 1993, were chosen by Diamandopoulos. The Attorney General also contends that Diamandopoulos’ use of an unrestricted expense account resulted iri Diamandopoulos “causing or permitting” University assets to be used for expenses in an unreasonable way.
The complaint contains sufficient allegations from which it can be inferred that he had significant influence on the members of the Executive Compensation Committee. Furthermore, Diamandopoulos’ use of the benefits, particularly his expense account, is subject to scrutiny. The complaint alleges, inter alia, that Diamandopoulos began to travel abroad at the University’s expense, in first class, often with his wife, despite the fact that his initial employment contract provided for reimbursement only for domestic travel, and that he was reimbursed over $360,000 for travel and entertainment expenses for the period of January 1, 1993 through June 30, 1996.
Even accepting Diamandopoulos’ argument that he did not set his own compensation, he was still obligated to act in good faith with respect to his utilization of an expense account. The fact that the other trustees may have been negligent in failing to oversee his expenses does not relieve him of his duty to act in good faith. Therefore, accepting the allegations in the complaint as true, and giving the plaintiff the benefit of every reasonably conceivable inference, the complaint pleads sufficient facts from which it could be found that Diamandopoulos caused or permitted himself to receive compensation in violation of his duty to act in good faith, by receiving excessive reimbursement for travel and entertainment. Therefore, the motion to dismiss the fifth cause of action is denied.
Diamandopoulos contends that the ninth cause of action must be dismissed because there are no allegations to support the claim that: “[b]y permitting the purchase by the University of a condominium apartment in Manhattan for his personal use and occupancy, defendant diamandopoulos failed to discharge his duties as trustees [sic] of Adelphi University in good faith in violation of Section 717 of the N-PCL.”
However, the Attorney General alleges that the Board authorized the purchase of the Manhattan apartment for develop *732 ment purposes, but it was used instead largely as Diamandopoulos’ Manhattan home. He claims that Diamandopoulos permitted the purchase knowing that it would be used primarily as a personal residence rather than for its authorized purpose. The Attorney General places great emphasis on the fact that Diamandopoulos recommended the purchase to the Finance Committee, and began searching for an apartment prior to the Board’s authorization of the purchase. The Board failed to evaluate any other less costly alternatives to achieving the objective of a “Manhattan presence,” or to investigate how the apartment they had previously rented had been used, or whether Adelphi had benefited from the rental of the prior apartment in New York City. The Attorney General further alleges that Diamandopoulos took advantage of his situation by furnishing and renovating the apartment to his liking at University expense, and sought reimbursement for $4,000 per year in holiday gratuities to the apartment staff.
There are allegations that Diamandopoulos exerted undue influence over the Board in order to cause it to purchase the apartment, and there are allegations that Diamandopoulos was responsible for appointing the members of the Finance Committee, which could possibly have tainted their recommendation to the entire Board. Therefore, the motion to dismiss the ninth cause of action is denied.
The fourteenth cause of action claims that: “[b]y causing or permitting the University to enter into a contract of sale with a delayed closing date with himself for the purchase of the condominium apartment in Manhattan, defendant peter diamandopoulos failed to discharge his duties as trustees [sic] of Adelphi University in good faith in violation of Section 717 of the N-PCL.”
The complaint alleges that approximately 10 months after purchasing the apartment, the Board offered Diamandopoulos a contract of sale with a delayed closing date under which he was given the right to purchase the apartment at any time, up to within 15 days of his separation from Adelphi, for $905,000. This portion of the motion is also denied.
The twenty-second cause of action states: “By causing or permitting the University to purchase advertising services from or through lois/usa, defendant peter diamandopoulos failed to discharge his duty as trustee of Adelphi University in good faith in violation of Section 717 of N-PCL.”
The twenty-fourth cause of action alleges: “By causing or permitting the University to purchase advertising services *733 from or through lois/usa, defendant george lois and defendant peter diamandopoulos violated Section 715 of N-PCL by-failing to disclose to the full Board of trustees the material facts of defendant Lois’ interest in those transactions, and the full Board did not otherwise have knowledge of those facts.”
The complaint alleges that in December 1994, the full Board unanimously approved an advertising campaign presented by Lois, which was to be executed by Lois’ agency, LOIS/USA. At a March 8, 1995 Board meeting, Diamandopoulos thanked Lois for “giving his services, free of charge, to the University.” It further alleges that the Board did not know that it was only the creative cost of the work that was donated until June 1996. The Regents’ report found that Diamandopoulos knew that Lois’ firm was receiving commissions from advertisements they placed on Adelphi’s behalf, but failed to report that information to the Board.
If the allegations in the Regents’ report and those in the complaint are taken as true, as they must be on a motion to dismiss (see, Leon v Martinez, 84 NY2d 83, supra), the allegations support the twenty-second and twenty-fourth causes of action. Therefore, Diamandopoulos’ motion to dismiss those causes of action is denied.
Accordingly, it is hereby ordered that defendants’ motion for advance indemnification is denied; and it is further ordered that defendants’ motion for a stay of these proceedings is denied as moot; and it is further ordered that the motions to dismiss are denied; and it is further ordered that defendants are directed to serve an answer to the complaint within 10 days after service of a copy of this order with notice of entry and to appear at Part 53 on May 6, 1998 at 9:30 a.m. for the purpose of entering into a preliminary conference/compliance conference order.